1  Brent T. Kolvet, Esq.
   State Bar No. 1597
2  Thorndal, Armstrong, Delk, Balkenbush & Eisinger
   6590 S. McCarran, Suite B
3  Reno, Nevada 89509
   Attorneys for Defendants
4

5
                    UNITED STATES DISTRICT COURT
6
                        DISTRICT OF NEVADA
7

8  STEWART HANDTE,                        CASE NO.   3:10-CV-00111-LRH-RAM
                             Plaintiff,
9
   vs.
10                                        **DEFENDANTS' REPLY
   JAMES G. MILLER, an individual; STOREY   MEMORANDUM OF POINTS AND
11 COUNTY, a political subdivision of the State AUTHORITIES IN SUPPORT OF THEIR
   of Nevada; GERALD ANTINORO, an         MOTION TO DISMISS PLAINTIFF'S
12 individual,                            FIRST AMENDED COMPLAINT
                                          PURSUANT TO FRCP 12(b)(6)**
13                           Defendants.

14
           COME NOW Defendants, JAMES G. MILLER, STOREY COUNTY and GERALD
15
   ANTINORO (collectively "Defendants,") by and through their attorneys, Thorndal, Armstrong,
16
   Delk, Balkenbush & Eisinger, and hereby submit their reply memorandum of points and
17
   authorities in support of their motion to dismiss Plaintiff's First Amended Complaint.
18
           By way of the filing of the instant reply, Defendants will attempt to address the major
19
   issues of law discussed in Plaintiff's opposition.  However, it is respectfully submitted that the
20
   failure to address any specific issue of law raised by Plaintiff is not to be taken as an admission
21
   of same by Defendants.
22
                                 **I.  INTRODUCTION**
23
           Plaintiff, Steward Handte ("Plaintiff"), filed his First Amended Complaint against
24
   Defendants on March 22, 2010.  Generally, Plaintiff claims that he was constructively discharged
25
   from his position as a Deputy Sheriff in violation of his First Amendment rights based, in part,
26
   for criticizing both the manner in which the Storey County Sheriff's Office ("Sheriff's Office")
27
   conducted an internal investigation of his conduct and the manner in which it carried out its
28
   firearms training.

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

1   In an effort to distract the Court, Plaintiff creatively spins the facts contained in his

2   amended complaint and cites to authority which is not applicable to this case.  Plaintiff would

3   have this Court believe that he spoke out on matters of corruption or wrongful conduct by

4   government officials, and addressed concerns which pertained to the evaluation of the Sheriff's

5   Office.  However, a simple review of the allegations contained on the face of Plaintiff's First

6   Amended Complaint reveals that Plaintiff's claims are meritless.  As will be discussed below,

7   Plaintiff's alleged speech solely concerned his own personal interests and his individual

8   employment dispute with the Sheriff's Office.  Plaintiff's alleged speech did not concern the

9   public.  Such speech is not protected by the United States Constitution, and therefore, Plaintiff's

10  Complaint fails to state a valid First Amendment claim.

11  Plaintiff also amended his original complaint by improperly asserting additional claims

12  which are time-barred.  The allegations which support Plaintiff's claims for defamation and

13  violation of the Family Medical Leave Act occurred over two (2) years prior to the date he filed

14  this lawsuit.  As such, these claims must be dismissed.

15  Plain and simply, all of Plaintiff's claims must be dismissed as there are no set of facts

16  which would entitle him to relief.

## II.  LEGAL ANALYSIS

### A.      Plaintiff's Claims Against Lieutenant Antinoro Must be Dismissed

18      Any and all claims asserted against Gerald Antinoro ("Lieutenant Antinoro") must be

19  dismissed because Plaintiff's First Amended Complaint fails to allege any facts of wrongdoing

20  by Lieutenant Antinoro which could give rise to a constitutional violation.  The only action

21  which Lieutenant Antinoro is alleged to have engaged in, is participating in the decision to

22  suspend Plaintiff.  *See* Plaintiff's Opposition, p.1.  Plaintiff alleges no facts whatsoever in his

23  amended complaint which would indicate that Lieutenant Antinoro's decision to suspend

24  Plaintiff was motivated by retaliation.  Plaintiff's amended complaint only contains mere

25  conclusory statements, which are insufficient to survive a motion to dismiss.  *See Aschroft v.*

26  *Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

27  / / /

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

28

1    Lieutenant Antinoro recommended the suspension of Plaintiff for his accidental discharge

2   of a firearm.  This is evident from the Face of Plaintiff's Complaint.  Plaintiff alleges that in July

3   of 2008, the Sheriff's Office conducted an investigation of Plaintiff for the discharge of a firearm

4   at the shooting range.  *See* ¶ 11 of Plaintiff's First Amended Complaint.  Thereafter, Plaintiff was

5   issued a two (2) day suspension by Lieutenant Antinoro.  *See* ¶ 12 of Plaintiff's First Amended

6   Complaint.  It is noteworthy that in his original complaint, Plaintiff acknowledged that the

7   discharge of his weapon was accidental and was indeed the reason for his suspension.  Plaintiff

8   conveniently omitted that language when he filed his First Amended Complaint.   Further, in his

9   First Amended Complaint, Plaintiff never denies that he accidentally discharged his firearm at

10   the shooting range.  In his First Amended Complaint, Plaintiff alleges that "[t]he investigation

11   was a ruse to create discipline for Plaintiff."  *See* ¶ 11 of Plaintiff's First Amended Complaint.

12   Plaintiff also alleges that the Defendants did not appreciate Plaintiff's speech, and determined a

13   two (2) day suspension as a result.  *See* ¶ 17 of Plaintiff's First Amended Complaint.  Other than

14   these conclusory statements, there are no facts in Plaintiff's amended complaint which would

15   indicate that Lieutenant Antinoro had retaliatory motives or retaliatory intent when participating

16   in the decision to suspend Plaintiff.

17    The claims asserted against Lieutenant Antinoro cannot withstand the instant motion

18   because there are no facts in Plaintiff's First Amended Complaint which support the mere

19   conclusory statements that Lieutenant Antinoro suspended Plaintiff for engaging in speech.  In

20   *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), the

21   United States Supreme Court analyzed the necessary requirements of a complaint which are

22   necessary to survive a motion to dismiss.  Federal Rule of Civil Procedure 8(a)(2) demands that a

23   pleading contain a "short and plain statement of the claim showing that the pleader is entitled to

24   relief."  While the Supreme Court noted that this pleading standard does not require detailed

25   factual allegations, it stated that "it demands more than an unadorned, the defendant-unlawfully-

26   harmed-me accusation."  *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S.

27   Ct. 1955).  "A pleading that offers 'labels and conclusions' or a formulaic recitation of the

28   elements of a cause of action will not do.'" *Id*.  Nor does a complaint suffice if it tenders "naked

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 3 -

1    assertion[s]' devoid of 'further factual enhancement.'" *Id*.

2        In *Ashcroft*, the Court went on to state that "[t]o survive a motion to dismiss, a complaint

3    must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

4    on its face.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955).

5    Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

6    short of demonstrating that a claim is plausible. *Ashcroft*, 129 S. Ct. at 1249.  The principle that

7    a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

8    conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere

9    conclusory statements do not suffice." *Id*.

10        In the instant matter, Plaintiff sets forth only conclusory statements that Lieutenant

11   Antinoro acted with retaliatory intent and that his decisions were based on Plaintiff's speech.  As

12   such, these statements must not be accepted as true.  Because Plaintiff's amended complaint is

13   devoid of any factual allegations of retaliatory intent or that Plaintiff's speech was the substantial

14   or motivating factor for Lieutenant Antinoro's actions, Plaintiff's claims against Lieutenant

15   Antinoro must be dismissed.

16        Even if this Court were to determine that Plaintiff's Amended Complaint contained

17   sufficient factual allegations, the dismissal of Plaintiff's claims against Lieutenant Antinoro is

18   warranted because Plaintiff's theory of causer liability has no merit.  In his Opposition, Plaintiff

19   cites to the case of *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) in arguing that any

20   recommendations by Lieutenant Antinoro to suspend Plaintiff are actionable under § 1983

21   because he caused each adverse employment action.  *See* Plaintiff's Opposition, p.1.  In *Johnson*,

22   the Ninth Circuit Court of Appeals stated that an individual may be liable under 42 U.S.C. §

23   1983 when he sets in motion a series of acts that he knows or reasonably should know will cause

24   another to inflict constitutional injury.  588 F.2d at 743-744.  In the case at bar, Plaintiff's

25   amended complaint is completely void of any facts which would demonstrate that Lieutenant

26   Antinoro knew or reasonably should have known that making a recommendation to suspend

27   Plaintiff for the inappropriate discharge of a firearm would lead to some type of constitutional

28   violation.  Suspensions of employees are often justified and do not constitute constitutional

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 4 -

violations.  As stated above, Plaintiff's First Amended Complaint indicates that Plaintiff was suspended for firing a weapon at the shooting range.  Plaintiff was suspended for actions which compromised the safety of other employees of the Sheriff's Office.  Such action does not constitute a constitutional injury.  *See Strahan v. Kirkland*, 287 F.3d 821, 825 (9th Cir.2002) (recognizing that a First Amendment retaliation claim fails when an adverse employment action was taken for legitimate, non-discriminatory reasons).  Because there are no factual allegations to support the notion that Lieutenant Antinoro knew or should have known that his actions would lead to a constitutional deprivation, he cannot be held liable under a theory of causer liability.

**B.      No Actionable Policy or Custom Exists in the Instant Matter Which Gives Rise to Liability Under 42 U.S.C. § 1983 as Against Storey County**

Storey County cannot be liable for the actions of James Miller (hereinafter "Sheriff Miller") because he did not commit or ratify a constitutional violation.  Plaintiff argues that the decisions or actions of Sheriff Miller constituted county policy because he is the final policymaker with respect to personnel matters at the Sheriff's Office.  In *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), the Ninth Circuit set out three ways in which a plaintiff can establish a § 1983 claim against a municipality.  A plaintiff's complaint must demonstrate facts to support one of the following scenarios: (1) that a policy or custom of the municipality gave rise to his or her injuries; (2) that the individual who committed the constitutional tort was an official with final policy-making authority such that the challenged action itself constitutes official government policy; or (3) that the official with policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  *Id.*

While Sheriff Miller may be the final policy-maker with regard to personnel matters regarding deputy sheriffs in Storey County, Plaintiff cannot prevail against Storey County because Sheriff Miller did not commit a constitutional tort by suspending Plaintiff, and Sheriff Miller did not ratify a recommendation or decision which was unconstitutional.  As will be discussed below, Plaintiff cannot allege a constitutional violation because he never engaged in protected speech, and any alleged speech was not a substantial or motivating factor for Plaintiff's suspension.  Because Sheriff Miller neither committed a constitutional tort nor ratified a decision

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 5 -

1   which was unconstitutional, Plaintiff's claims against Storey County must be dismissed.

2
**C.     Plaintiff's Claims Premised Upon First Amendment Retaliation Under 42 U.S.C. §
3           1983 Must be Dismissed**

4           Plaintiff's claims for First Amendment retaliation must be dismissed because he is not

5   entitled to relief based on the allegations set forth in his First Amended Complaint.

6           **(1)     Plaintiff's Speech Did Not Address Matters of Public Concern**

7           Determining whether the speech at issue addressed matters of public concern is purely a

8   question of law.  *Posey v. Lake Pend Oreille School District No. 84*, 546 F.3d 1121, 1126 (9th

9   Cir. 2008) (quoting *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006)).  As stated in

10  Defendants' motion to dismiss, the Ninth Circuit has repeatedly held that speech pertaining to

11  internal personnel disputes and grievances does not address matters of public concern.  *See Voigt*

12  *v. Savell*, 70 F.3d 1552, 1560 (9th Cir. 1995).  It is well established that the Plaintiff bears the

13  burden of showing that his speech addressed matters of public concern based on the content,

14  form, and context of his statements.  *See Desrochers v. City of San Bernardino*, 572 F.3d 703,

15  709 (9th Cir. 2009).  In the analysis of form and context, the court focuses on the purpose of the

16  speech, and considers such factors as the employee's motivation and the audience chosen for the

17  speech.  See *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir.2002).  In the

18  instant matter, Plaintiff is not entitled to relief because he did not engage in speech which was

19  protected by the First Amendment.  Plain and simply, Plaintiff's alleged speech related to a

20  grudge he had with his employer, and did not address matters of public concern.

21          In Plaintiff's Opposition, he attempts to distract this Court by disingenuously arguing that

22  his speech addressed a variety of matters which concerned the broader rights of officers and the

23  public.  Nothing could be further from the truth.  Plaintiff has converted his private employment

24  dispute into a vendetta against the entire Sheriff's Office and the individual Defendants by

25  asserting meritless claims for violations of his constitutional rights.  Plaintiff also improperly sets

26  forth allegations that had nothing whatsoever to do with any legitimate issue in this case.  Where

27  as here, a plaintiff misuses the judicial system under the guise of a civil rights action as a forum

28  to air a personal grudge regarding the management style of his supervisors, courts have held that

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 6 -

1   such suits are frivolous.  *See Kennedy v. McCarty*, 803 F. Supp. 1470, 1474-75, 1478 (S.D. Ind.

2   1992).  Courts have also determined that suits are meritless when the plaintiff transforms a

3   dispute with his employer into alleged violation of his constitutional rights and attacks individual

4   defendants.  *See Murphy v. Bd. of Educ. Of Rochester City Sch. Dist.*, 420 F. Supp. 2d 131, 136-

5   37 (W.D.N.Y. 2006).  In making a determination for attorney's fees, the court in *Murphy*

6   discussed circumstances under which a lawsuit is meritless:

7           Plaintiff took a run-of-the-mill dispute with his employer and not only
            transformed it into an alleged violation of his constitutional rights-which it was
8           not-but deliberately inflated it into a massive, multi-front legal offensive against
            the [defendants].  He did so in large part by means of ad hominem attacks on the
9           individual defendants . . . and by injecting into the case allegations that had
            nothing whatsoever to do with any legitimate issues in the case.

10

11   Id.  While a motion for attorneys' fees is not currently before this Court, *Murphy* demonstrates

12   how Plaintiff's claims lack merit.  A simple reading of the First Amended Complaint shows that

13   Plaintiff's speech consisted of nothing more than an expression of his dissatisfaction with the

14   manner in which the Sheriff's Office handled his individual personnel dispute regarding the

15   accidental discharge of his firearm at the shooting range.  Plaintiff complained that a thorough

16   Internal Affairs investigation over the incident had not been completed, and that he had not been

17   interviewed.  *See* ¶ 14 of Plaintiff's First Amended Complaint.  Plaintiff's alleged speech

18   occurred during a grievance meeting only after it was recommended that he receive a suspension

19   for his improper conduct, which further shows that his speech was nothing more than a reaction

20   and disagreement regarding the potential discipline that he faced.  *See* ¶¶ 4 and 12 of Plaintiff's

21   First Amended Complaint, and Plaintiff's Opposition, p.3.  Plaintiff's speech only concerned his

22   own position and the manner in which he was treated as an individual.  Unfortunately for

23   Plaintiff, private speech which challenges the investigation and punishment for a violation of

24   department policy is not protected by the First Amendment.  *See City of San Diego v. Roe*, 543

25   U.S. 77, 83-84, 125 S. Ct. 521, 526 (2004).

26           Plaintiff's reliance on the case of *Alpha Energy Savers, Inc*. v. *Hansen*, 381 F.3d 917 (9th

27   Cir. 2004) to support his assertion that speech may address matters of public concern even when

28

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 7 -

1  the speech concerns a single person's grievance is misplaced.[1]  *Hansen* is distinguishable from

2  this case because the plaintiff in *Hansen* was not a party to the grievance.  *Id*. at 921-923.  In

3  *Hansen*, the plaintiff claims that he was retaliated against for speaking about matters of public

4  concern while he testified as a witness and submitted sworn affidavits for a former employee's

5  grievance hearing.  *Id*.  A public employee's speech in support of a co-worker's grievance is

6  treated differently from employment grievances in which the employee himself is complaining

7  about his own job treatment.  *Id*. at 927 n.6; *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th

8  Cir. 2004).  In the case at bar, Plaintiff's speech was made at his own grievance hearing and

9  concerned his own personnel dispute.  Because Plaintiff's speech concerned his own job status,

10  his speech is not protected by the First Amendment.  *Id*.  Furthermore, in *Hansen*, the plaintiff's

11  speech exposed race and age discrimination by a governmental employer.  *Hansen*, 381 F.3d at

12  925.  In the instant matter, Plaintiff's speech did not relate to matters of political, social, or other

13  concern to the community, and therefore he did not engage in protected speech.

14      Plaintiff argues that he spoke on matters of public concern by making the conclusory

15  statement that the internal affairs investigation into his conduct violated Nevada law, but he fails

16  to specify what particular statute is implicated and how the Sheriff's Office failed to comply with

17  the law.  *See* Plaintiff's Opposition, p.3.   As stated previously, legal conclusions are not to be

18  accepted as true when a court makes a determination on a motion to dismiss.  See, *Ashcroft*, 129

19  S. Ct. at 1249.  In Plaintiff's First Amended Complaint, he only makes a general reference to

20  Chapter 289 of the Nevada Revised Statutes which addresses a variety of issues concerning peace

21  officers, and he fails to allege specific facts which would support his assertion that the Sheriff's

22  Office engaged in any unlawful conduct.  Moreover, even if Plaintiff did identify a statute which

23  was violated by the Sheriff's Office, his speech would not address matters of public concern if

24  the statute governs the internal employment actions of law enforcement agencies which do not

25  address public safety.  *See Simontacchi v. Nevada Department of Public Safety*, 2009 WL

26

27  _____

28  [1]  The cases which are cited by Plaintiff in arguing that speech may address matters of public concern even when made for the purpose of addressing a personal grievance are inapposite.  The cases cited by Plaintiff are based on facts which are entirely different from the case at bar.

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

803119 *7 (D. Nev. March 25, 2009).  This case has been attached hereto as Exhibit 1 pursuant to Ninth Circuit Rule 36-3 and Fed. R. App. P. 32.1. Accordingly, Plaintiff's First Amended Complaint fails to sufficiently allege any violation of Nevada law by Defendants.

Plaintiff's First Amended Complaint also alleges that he made complaints regarding the firearms training policy and wages, but those comments were clearly a by-product of Plaintiff's internal personnel dispute.  The form and context of the Plaintiff's statements demonstrate that the speech was merely intended to highlight a workplace grievance rather than provide information relevant to the public's evaluation of the Sheriff's Office.  Moreover, the allegations concerning statements made by Plaintiff's representative regarding employee overtime had nothing whatsoever to do with Plaintiff's personnel dispute.  Plaintiff's representative simply addressed the overtime issue while he was present at the administrative hearing on July 24, 2008, and those comments in no way, shape, or form relate to this case.  Furthermore, Plaintiff fails to identify a statute which is implicated by the overtime policy that pertains to issues other than the internal employment actions of law enforcement agencies.  *Id*.  Accordingly, Plaintiff's speech did not address matters of public concern.

Plaintiff's alleged complaints regarding the firearms training at the Sheriff's Office did not constitute a matter of public concern.  Complaints over internal office affairs are not protected by the First Amendment.  *See Weisbuch v. County of Los Angeles*, 119 F.3d 778, 782 (9th Cir. 1997).  As the Supreme Court explained in *Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1684:

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Indeed, not all issues which relate to a public agency constitute matters of public concern.  "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark ... would plant the seed of a constitutional case."  Id. at 149, 103 S.Ct. at 1691.  In the case at bar, Plaintiff's speech regarding the firearms training at the Sheriff's

THORNDAL, ARMSTRONG, DELK, BALKENBUSH & EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 9 -

1   Office is a completely internal office affair and does not relate to a matter of political, social, or

2   other concern to the community.  Additionally, any comments regarding the firearms policy

3   pertain to Plaintiff's own personnel dispute and grievance as evidence by the fact that his

4   suspension arose from his accidental discharge of a firearm during training, and therefore his

5   speech did not address matters of public concern.

6         Furthermore, complaints about mismanagement of command level personnel in a police

7   department, training, internal department politics, favoritism, transfers, *training*, personnel

8   relationships, employment policies, and promotional exams are among matters considered to be

9   of private, rather than public concern. *See Gros v. Port Washington Police Dist.*, 944 F. Supp.

10   1072, 1079 (E.D.N.Y.1996) (emphasis added).  Additionally, Plaintiff's First Amended

11   Complaint contains only conclusory allegations that the firearms policy at the Sheriff's Office is

12   illegal.  *See* Plaintiff's First Amended Complaint, p.3.  Plaintiff's amended complaint fails to

13   identify any statute which is implicated by the firearms policy, and he also fails to allege how the

14   policy violates the law.  Accordingly, this Court should not accept those statements as true when

15   making a determination on Defendants' motion to dismiss.

16         Lastly, the fact that Plaintiff expressed his alleged concerns regarding his personnel

17   dispute to a limited audience indicates that he did not engage in protected speech.  The Ninth

18   Circuit has held that a plaintiff's motivation and chosen audience are among the factors to be

19   considered in determining whether the speech addresses a matter of public concern.  *See Johnson*

20   *v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995).  In the instant matter, Plaintiff expressed

21   his concerns for the purpose of addressing his personnel dispute, and he communicated his

22   concerns to a very limited number of individuals at the Sheriff's Office.  Plaintiff's First

23   Amended Complaint does not indicate that Plaintiff expressed his concerns to anyone other than

24   the individuals who were present at the July 24, 2008 grievance meeting, which was held to

25   address Plaintiff's potential suspension.  The fact that Plaintiff's speech pertained to his

26   grievance and was communicated to a limited audience, weigh heavily against a finding that his

27   speech addressed matters of public concern.

28         Based upon the foregoing, Plaintiff's speech failed to address a matter of public concern.

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

1   Accordingly, Plaintiff's First Amended Complaint fails to state a claim for First Amendment

2   retaliation against all Defendants.

3           **(2)     Plaintiff's Alleged Protected Speech was Not a Substantial or Motivating
                      Factor for Any Adverse Employment Action**

4
           Even if this Court were to determine that Plaintiff engaged in protected speech, his

5   retaliation claims fail because the alleged protected speech was not a substantial or motivating

6   factor for the decision to suspend Plaintiff.  *See Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir.

7   2009).  In the case at bar, based on the information obtained during the investigation, Lieutenant

8   Antinoro recommended that Plaintiff receive a two (2) day suspension for the incident.  *See*

9   Plaintiff's First Amended Complaint, p.2.  The investigation continued when Plaintiff appealed

10  the suspension and attended a grievance hearing on or about July 24, 2008.  *Id.* at 2-3.  Plaintiff

11  expressed his objections regarding the firearms training policy and the manner in which the

12  Sheriff's Office conducted the investigation into his conduct.  *Id*. at 3.  In addition, Plaintiff's

13  representative made statements regarding the overtime policies, which were completely unrelated

14  to the Plaintiff's suspension.  *Id*.  Ultimately, Sheriff Miller ratified Lieutenant Antinoro's

15  recommendation and imposed a two (2) day suspension against Plaintiff.  *Id*. at 2.

16
           Common sense dictates that if any action is taken before a plaintiff engages in speech, it

17  must follow that the speech could not be a substantial or motivating factor for the alleged adverse

18  action.  In the instant matter, Lieutenant Antinoro recommended the suspension prior to the time

19  that Plaintiff expressed his concerns to the Sheriff's Office.  Plaintiff engaged in speech after

20  Lieutenant Antinoro made the recommendation, but before Sheriff Miller made the final

21  determination with respect to the discipline.  *Id*. at 3.  Furthermore, it is evident from the face of

22  Plaintiff's First Amended Complaint that Lieutenant Antinoro's recommendation to suspend

23  Plaintiff was based solely upon the accidental discharge of his firearm, and had absolutely

24  nothing to do with his speech.  *Id*. at 2.  Other than Plaintiff's conclusory allegations, his

25  complaint does not contain any factual allegations which would indicate that Lieutenant

26  Antinoro's actions were pretext for retaliation.

27
           Plaintiff's First Amended Complaint also fails to demonstrate that Plaintiff's speech was

28

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 11 -

1    the substantial or motivating factor of Sheriff Miller's decision to ratify his suspension.  Plaintiff

2    unsuccessfully argues that the temporal proximity between Plaintiff's alleged protected activity

3    and any alleged action is evidence of retaliation.  The Ninth Circuit has held that length of time

4    between the protected activity and the alleged adverse employment action will not be considered

5    without regard to its factual setting.  *See Coszalter v. City of Salem,* 390 F.3d 968, 978 (9th Cir.

6    2003).  In this case, Plaintiff happened to engage in speech at a time when Plaintiff was already

7    under investigation for dangerous conduct.  Indeed, the Lieutenant Antinoro had already

8    recommended the alleged adverse employment action before Plaintiff engaged in any speech.

9    Accordingly, Plaintiff's argument with respect to temporary proximity is not persuasive under the

10   factual circumstances of this case.  To the extent that Plaintiff is arguing temporal proximity with

11   respect his departure from the Sheriff's Office, such a proposition fails because he was not

12   terminated from his position, but instead resigned on his own volition.

13          Lastly, but not least importantly, it is evident from the face of the amended complaint that

14   Plaintiff was suspended for his own actions, which consisted of the dangerous discharge of his

15   firearm.  Such action compromised the safety of the other officers within the sheriff's Office.

16   Plaintiff's First Amended Complaint does not contain any factual allegations which would

17   indicate that Sheriff Miller's decision to suspend Plaintiff had anything to do with Plaintiff's

18   speech.  Additionally, Plaintiff's Complaint is void of any factual allegations where Defendants

19   opposed his speech.

20          Based upon the foregoing, it is clear that Plaintiff's speech was not a substantial or

21   motivating factor for the alleged adverse employment action.

22
     **D.      Plaintiff's Claims Premised Upon Violations of the Family Medical Leave Act Must
23           be Dismissed**

24          When Plaintiff filed his First Amended Complaint he improperly inserted claims against

25   Storey County and Sheriff Miller because the claims are time-barred by the applicable statute of

26   limitations.  A claim for violations of the Family Medical Leave Act ("FMLA") must be brought

27   within two (2) years of the alleged violation.  *See* 29 U.S.C. § 2617(c)(1).  29 U.S.C. §

28   2617(c)(1) specifically provides, "[e]xcept as provided in paragraph (2), an action may be

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 12 -

brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." In Plaintiff's First Amended Complaint, he alleges that his FMLA rights were violated when he was disciplined for taking leave in November, 2007. *See* Plaintiff's Complaint, p.2. Plaintiff filed the instant lawsuit on February 25, 2010. Plaintiff did not assert a cause of action for violations of his FMLA rights until he filed his First Amended Complaint on March 22, 2010. Even if Plaintiff's FMLA claims relate back to the date of his original complaint pursuant to FRCP 15(c), he still failed to timely file his claim. At the latest, Plaintiff was required to file his claims premised upon violations of FMLA before October 1, 2009. Because Plaintiff's claims are barred by 29 U.S.C. § 2617(c), they must be dismissed.

**E.      This Court Should Not Exercise Jurisdiction Over Plaintiff's State Law Claims**

Respectfully, because all of Plaintiff's federal claims should be dismissed, this Court should not exercise jurisdiction over his state law claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966). Nevertheless, even if the Court exercises supplemental jurisdiction over Plaintiff's state law claims, independent grounds for dismissal exist.

**F.      Plaintiff's Tortious Discharge Claim Must be Dismissed**

As discussed in Defendants' motion to dismiss, a claim for tortious discharge may not be based on a mixed-motives theory. *See Allum v. Valley Bank v. Nevada*, 114 Nev. 1313, 970 P.2d 1062 (1998). In other words, Plaintiff's claim should be dismissed because his alleged speech was not the sole reason for his alleged constructive discharge. Based on the allegations contained in Plaintiff's amended complaint, it is clear that the Sheriff's Office initiated an investigation into Plaintiff's conduct for the discharge of a firearm at the shooting range, and Plaintiff ultimately received a two (2) day suspension for that conduct. *See* Plaintiff's First Amended Complaint, p.2-3. Plaintiff effectively admits that he was suspended for the discharge of his firearm, and not his speech, when he argues that the discipline was unwarranted because he did not negligently handle his weapon. This should end the discussion because a Plaintiff cannot prevail on a claim

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 13 -

1    for tortious discharge when the constructive discharge was based on a mixture of legitimate

2    reasons and legally prohibited reasons.  Together, the facts contained in Plaintiff's First

3    Amended Complaint and the admission by Plaintiff that he was suspended in part for the

4    discharge of his firearm forecloses Plaintiff's ability to recover under a tortious discharge theory.

5         **(1)      Plaintiff's Resignation was not Induced by Actions that Violate Public Policy**

6         Yet another reason why Plaintiff's tortious discharge claim should be dismissed is that

7    Plaintiff's resignation was not induced by actions which violate public policy.  None of the

8    actions by Defendants violated public policy as defined by cases such as *Wayment v. Holmes*,

9    112 Nev. 232, 237, 912 P.2d 816, 819 (1996).  As stated in Defendants' motion to dismiss, a

10   claim for tortious discharge is reserved for extreme situations which do not exist in this case.  *See*

11   *Allum*, 114 Nev. at 1313, 970 P.2d at 1062.  The employer must have engaged in conduct that is

12   outrageous and violates public policy.  *See State v. Eighth Judicial Dist. Ct.*, 118 Nev. 140, 151,

13   42 P.3d 233, 240 (2002).  Plaintiff's argument that the investigation and suspension of Plaintiff

14   violated public policy is absurd.  Contrary to what Plaintiff would have this Court believe, the

15   Sheriff's Office may have violated public policy if it had neglected to discipline Plaintiff for the

16   dangerous discharge of his firearm.  If the Sheriff's Office failed to discipline Plaintiff for his

17   conduct it would have have created a working environment that would have been unreasonably

18   dangerous to its employees.  Instead, the Sheriff's Office took steps to ensure the safety of its

19   officers, which is consistent with public policy.  Because Plaintiff's amended complaint fails to

20   demonstrate that the Sheriff's Office violated important public policy under Nevada law, the

21   claim should be dismissed.

22        **(2)      A Reasonable Person in Plaintiff's Position Would Not Have Resigned**

23        The final reason why Plaintiff's tortious discharge claim should be dismissed is that

24   Plaintiff was not constructively discharged.  The Sheriff's Office did not create working

25   conditions that were so intolerable that a reasonable person in Plaintiff's position would have felt

26   compelled to resign.  The Ninth Circuit has held that single, trivial, or isolated acts of misconduct

27   are insufficient to support a constructive discharge claim.  *See King v. AC & R Advertising*, 65

28   F.3d 764, 767-768 (9th Cir. 1995).  Plaintiff attempts to extract arguments that are inconsistent

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 14 -

1   with the factual allegations in his amended complaint when he argues that he suffered a

2   continuity of repetitious adverse employment actions.  *See* Plaintiff's Opposition, p. 7.  Even

3   when all of Plaintiff's allegations are taken as true, a simple reading of his First Amended

4   Complaint reveals that the alleged acts were isolated and few in number.  This being so, Plaintiff

5   cannot establish that he was constructively discharged.  It is important to note that Plaintiff never

6   made any complaints regarding the alleged adverse actions until he was under investigation and

7   faced possible suspension.  Plaintiff's reliance of *Draper v. Coeur Rodchester, Inc.*, 147 F.3d

8   1104, 1110 (9th Cir. 1998) and *Nolan v. Cleland*, 686 F.2d 806, 813 (9th Cir. 1982) is misplaced.

9   Unlike the case at bar, the plaintiff in *Draper* was subjected to continuous sexual harassment and

10  was the target of graphic sexual remarks.  In *Nolan*, the plaintiff was the victim of constant sex

11  discrimination which prevented her from advancing in her employment.  Unlike this case, the

12  plaintiffs in both *Draper* and *Nolan* filed complaints regarding their treatment and the conduct

13  continued to occur.  In the case at bar, Plaintiff never made any complaints regarding the alleged

14  adverse actions, and at the most, Plaintiff's allegations identify two (2) incidents which occurred

15  within the limitations period.  This further demonstrates that the working conditions of Plaintiff's

16  employment was not intolerable.

17          Plaintiff has alleged that during the July 24, 2008 grievance meeting Sheriff Miller told

18  Plaintiff that he "was dangerously close to being terminated."  As stated in Defendants' motion

19  to dismiss, when Sheriff Miller made that statement he was simply giving Plaintiff an

20  opportunity to improve his conduct.  Sheriff Miller never indicated that termination was

21  imminent, and Plaintiff fails to set forth any factual allegations which would demonstrate that

22  Plaintiff's termination was indeed forthcoming.  Moreover, courts have held that allegations

23  which indicate that an employer intentionally criticized an employee's job performance and made

24  conditional threats of termination if performance did not improve, is insufficient to prove

25  constructive discharge.  *See Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1156 (2d Cir.

26  1993); *see also Hockeson v. New York State office of General Services*, 188 F. Supp. 2d 215, 220

27  (N.D.N.Y. 2002) (holding that allegations that employer made statements to employee that she

28  had to "sink or swim" and that "one more step and she was out the door" were insufficient to

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 15 -

1    demonstrate constructive discharge).  Like in *Spence*, Plaintiff was simply given an opportunity

2    to improve his behavior.  Accordingly, a reasonable person in Plaintiff's position would not feel

3    compelled to resign.

4           Based upon the foregoing, Plaintiff's claim for tortious discharge must be dismissed

5    because Plaintiff is not entitled to relief.

6    **G.    Plaintiff's Defamation Claim Must be Dismissed**

7           When Plaintiff filed his First Amended Complaint he improperly inserted a claim for

8    defamation against Sheriff Miller.  Plaintiff's defamation claim must be dismissed because it is

9    barred by the applicable statute of limitations.  A claim for defamation must be filed within two

10   (2) years.  *See* NRS 11.190(4)(c).  In Plaintiff's First Amended Complaint, he alleges that he was

11   defamed when Sheriff Miller gave Plaintiff a statute of the hind end of a horse in December,

12   2007.  *See* Plaintiff's First Amended Complaint, p.2.  As stated above, Plaintiff filed the instant

13   lawsuit on February 25, 2010.  Plaintiff did not assert a claim for defamation until he filed his

14   First Amended Complaint on March 22, 2010.  Even if Plaintiff's defamation claim relates back

15   to the date of his original complaint pursuant to FRCP 15(c), his claim would still be untimely.

16   Said incident occurred more than two (2) years prior to the filing of Plaintiff's complaint, and

17   such actions are not actionable as conceded by Plaintiff.  *See* Plaintiff's Opposition, p.7 n.1.

18   Because Plaintiff's claim is barred by the provisions of NRS 11.190(4), his claims must be

19   dismissed as he fails to state a claim upon which relief may be granted.

20          Even if the allegations for defamation were considered by this Court, Plaintiff would not

21   be entitled to relief.  To state a claim for defamation a plaintiff must prove the following

22   elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff,

23   (2) that the defendant published the statement to a third party without privilege, (3) that there was

24   fault amounting to at least negligence by the defendant; and (4) that the statement was either per

25   se defamation, or the defamation caused special harm.  *See Lubkin v. Kunin*, 117 Nev. 107, 111,

26   17 P.3d 422, 425 (2001).  A plaintiff must demonstrate that the defendant made a false statement

27   of fact, as opposed to a statement of opinion.  *See Miller v. Jones*, 114 Nev. 1291, 1296, 970 P.2d

28   571, 575 (1998).  In the case at bar, Plaintiff's amended complaint is void of any allegations that

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

- 16 -

1   Sheriff Miller made any false and defamatory statements whatsoever concerning Plaintiff.  Even

2   if the act of giving Plaintiff a statue is considered to be a statement (which it is not), it would be

3   nothing more than a statement of opinion, and therefore is not actionable.  *Id.*  Any argument to

4   the contrary would be disingenuous.  An argument that Sheriff's Miller's actions constituted a

5   statement of fact would effectively mean that Sheriff Miller was communicating that Plaintiff

6   was indeed the hind end of a horse.  Such an argument would be ridiculous.  This further

7   demonstrates how Plaintiff's defamation claim fails.

8          Respectfully, Plaintiff's defamation claim must be dismissed because the allegations

9   contained in Plaintiff's complaint would not entitle him to relief.

10                              **III.  CONCLUSION**

11         Based upon the foregoing, Defendants respectfully request that this Court dismiss

12   Plaintiff's First Amended Complaint in its entirety because Plaintiff fails to state any claims upon

13   which relief may be granted.

14         DATED this 7th day of May, 2010.

15

16                              THORNDAL, ARMSTRONG,
                                 DELK, BALKENBUSH & EISINGER

17

18                              By: /s/ *Brent T. Kolvet*
                                    Brent T. Kolvet, Esq.
                                    State Bar No. 1597
19                                  6590 S. McCarran Blvd., Suite B
                                    Reno, Nevada 89509
20                                  Attorneys for Defendants
                                    JAMES G. MILLER, STOREY COUNTY
21                                  and GERALD ANTINORO

22

23

24

25

26

27

28

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882

1

**CERTIFICATE OF SERVICE**

2

Pursuant to FRCP 5(b), I certify that I am an employee of Thorndal, Armstrong, Delk,

3

Balkenbush & Eisinger, and that on this date I caused the foregoing **DEFENDANTS' REPLY**

4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR**

5

**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT  PURSUANT**

6

**TO FRCP 12(b)(6)** to be served on all parties to this action via the U.S. DISTRICT COURT's

7

CM/ECF Electronic Filing System, fully addressed as follows:

8

**Jeffrey A. Dickerson, Esq.**
**9555 Gateway Drive, Suite B**

9

**Reno, NV 89521**
**Phone:   786-6664**

10

**Fax:       786-7466**
**E-Mail:jeff@gbis.com**

11

***Attorneys for Plaintiff***

12

DATED this 7th day of May , 2010.

13

14

/s/ *Mary C. Wilson*

15

An employee of Thorndal, Armstrong,
Delk, Balkenbush & Eisinger

16

17

18

19

20

21

22

23

24

25

26

27

28

THORNDAL, ARMSTRONG,
DELK, BALKENBUSH
& EISINGER
6590 S. McCarran, Suite B
Reno, Nevada 89509
(775) 786-2882