UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEWART HANDTE,<br><br>        Plaintiff,<br><br>v.<br><br>JAMES G. MILLER, an individual; STOREY COUNTY, a political subdivision of the State of Nevada; GERALD ANTINORO, an individual,<br><br>        Defendants. | 3:10-CV-00111-LRH-RAM<br><br><u>ORDER</u> |

Before the court is Defendants James G. Miller, Storey County and Gerald Antinoro's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) (#9[1]). Plaintiff Stewart Handte filed an opposition (#10), Defendants filed a reply (#13), and at the court's direction Plaintiff filed a sur-reply (#19).

**I.    Facts and Procedural History**

This action arises out of Plaintiff's employment and the termination of his employment as a deputy sheriff with the Storey County Sheriff's Office. Defendant Miller was the Sheriff and defendant Antinoro was a lieutenant with the Sheriff's Office during the time period in question,

---

[1] Refers to the court's docket entry number.

November 2007 to August 2008. Plaintiff's claims are based on the following series of events, as alleged in the First Amended Complaint (#5).

In November 2007, Plaintiff was disciplined by Sheriff Miller and Lieutenant Antinoro with a one-day suspension and written reprimand for going to socialize with co-workers off-duty after having called in sick to care for his seriously ill mother. Doc. #5, p. 2. Plaintiff alleges the department's sick leave policy did not prohibit such activity, and that his sick leave was qualified leave under the Family and Medical Leave Act of 1993 ("FMLA"). *Id.*

In December 2007, Sheriff Miller "awarded" Plaintiff with a statue of the hind end of a horse in front of his colleagues, implying "that Plaintiff was unfit for his duties and that he was a 'horse's ass'." *Id.* This "created an atmosphere . . . of ostracism as the Sheriff had rendered Plaintiff a pariah," and it "resulted in almost daily incidents with colleagues and management." *Id.*

Commencing in July 2008, a "purported investigation was conducted at the behest of Defendants regarding a discharge of a weapon at the shooting range by Plaintiff." *Id.* While that investigation was ongoing, Plaintiff complained that a thorough Internal Affairs investigation over the incident had not been completed and that he had not been interviewed. *Id.* at 3. Plaintiff also "criticized the new firearms training that required officers to point weapons at fellow employees, as unsafe, dangerous and illegal." *Id.* Plaintiff alleges this criticism was not a part of his job duties, and it "pointed out a danger, a level of discomfort, a refusal to violate law, and a policy contrary to traditional firearms philosophy and workplace safety at a public agency." *Id.* Plaintiff ultimately received a two-day suspension without pay that was issued by Lieutenant Antinoro and ratified by Sheriff Miller; however, Plaintiff alleges "[t]he investigation was a ruse to create discipline for Plaintiff" and "[t]he discipline was unwarranted because Plaintiff had not negligently handled his weapon and had not refused to obey an order." *Id.* at 2. Instead, Plaintiff alleges, the discipline was retaliation for his speech: "The Defendants did not appreciate Plaintiff's candidness, *i.e.,* his free speech, and determined a two-day suspension without pay as a result." *Id.* at 3.

During a grievance meeting on July 24, 2008, Plaintiff again complained that his rights to proper investigative proceedings under Chapter 289 of the Nevada Revised Statutes had been violated during the course of the investigation. *Id.* Furthermore, Plaintiff's representative made statements on Plaintiff's behalf about "the changing of the practice of when an employee starts and ends overtime." *Id.* "Immediately following these statements by Plaintiff and his representative, the Sheriff told Plaintiff that he was 'dangerously close to being terminated'." *Id.* at 4.

Plaintiff resigned approximately one month later, on August 26, 2008. Plaintiff alleges he resigned "(1) in order to avoid a termination, which would be a black mark upon his record in addition to the adverse employment actions already imposed by Miller, and (2) because his working environment had become intolerable to a reasonable person such that he would feel compelled to resign." *Id.* (footnote omitted).

Plaintiff filed his original complaint (#1) initiating this action on February 25, 2010. After Defendants moved to dismiss the case (#4), Plaintiff amended his complaint by revising his allegations and adding two claims for relief. The presently-operative First Amended Complaint (#5) asserts four claims: (1) First Amendment retaliation under 28 U.S.C. § 1983 against all three defendants—Miller, Antinoro and Storey County; (2) constructive discharge against Storey County; (3) interference with FMLA rights against Miller and Storey County; and (4) defamation against Miller. Miller and Antinoro are sued solely in their individual capacities.

Arguing that the amendments did not change the basis for dismissal of Plaintiff's suit, Defendants filed a motion for re-submission of their motion to dismiss (#6). However, following an objection by Plaintiff regarding the propriety of such a procedure, Defendants agreed to eliminate any confusion by filing a separate motion to dismiss Plaintiff's first amended complaint (#9)—the motion now before the court. Plaintiff filed an opposition (#10), and Defendants filed a reply (#13). Because Defendants made a substantial showing that Plaintiff' third and fourth claims for relief are time-barred but raised such issues for the first time in their reply memorandum, the

3

court entered an order (#18) affording Plaintiff the opportunity to file a sur-reply addressing why the claims should not be dismissed. Plaintiff accordingly filed a sur-reply (#19) contesting the dismissal of his FMLA claim but conceding that his defamation claim is untimely.

## II.    Legal Standard

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret*

*Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

## III. Discussion

### A. First Amendment Retaliation

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment right to free speech. "It is well settled that 'a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006) (quoting *Connick v. Meyers*, 461 U.S. 138, 142 (1983)). Generally, "[t]o sustain a First Amendment retaliation claim, a public employee must show (1) the employee engaged in constitutionally protected speech, (2) the employer took adverse employment action against the employee, and (3) the employee's speech was a 'substantial or motivating' factor in the adverse action." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (quoting *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006)).

Noting that "First Amendment retaliation law has evolved dramatically, if somewhat inconsistently," the Ninth Circuit has clarified and explained the appropriate approach to assessing a First Amendment retaliation claim. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). In doing so, the court outlined the following sequential, five-step series of questions to be answered in a First Amendment retaliation case: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in an adverse employment action; (4)

whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Id.*

Determining whether the speech at issue touched on a matter of public concern is purely a question of law properly decided on a motion to dismiss. *Gibson v. Office of Atty. Gen., State of Cal.*, 561 F.3d 920, 925 (9th Cir. 2009). The plaintiff "bear[s] the burden of showing that [his] speech addressed an issue of public concern based on the content, form, and context of a given statement, as revealed by the whole record." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009) (citations and internal quotation marks omitted).

The "greatest single factor" in determining whether speech addressed a matter of public concern is the content of the speech. *Id.* (citation omitted). "If employee expression relates to an issue of 'political, social, or other concern to the community,' it may fairly be said to be of public concern." *Brewster v. Lynwood Unified Sch. Dist.*, 149 F.3d 971, 978 (9th Cir. 1998) (*quoting Connick*, 461 U.S. at 146). In particular, speech addresses a matter of public concern where it involves "issues about which information is needed or appropriate to enable the members of society to make informed decision about the operation of their government." *Desrochers*, 572 F.3d at 710 (citation omitted). "On the other hand, speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (citation omitted).

In addition, the form and context of Plaintiff's speech are also relevant to the court's assessment of whether the speech is protected under the First Amendment. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002). In the analysis of form and context, the court focuses on the purpose or "'the *point* of the speech,'" and it considers "such factors as the 'employee's motivation and the audience chosen for the speech.'" *Id.* (citations omitted).

Plaintiff's First Amendment retaliation claim is based on three categories of speech: (1) complaints that his statutory rights to a thorough Internal Affairs investigation had been violated; (2) criticism of the changed practice of when an employee starts and ends overtime; and (3) criticism of the new firearms training policy that required officers to point weapons at fellow employees. Doc. #5, p. 3. The court will analyze each category of speech in turn.

### 1. Internal Affairs Investigation

Plaintiff contends that his criticisms of the Internal Affairs investigation into the discharge of his firearm at the shooting range "were of public concern because they . . . pertained not only [to] his grievance but to the broader rights of all officers under Nevada Revised Statutes Chapter 289 to proper investigative proceedings," and that he "was attempting to establish precedent for future investigations." Doc. #5, ¶ 15. Plaintiff further argues in his opposition memorandum that he "is a veteran police officer, with notable experience in representation of peace officers, including as president of the association of highway patrolmen in the Nevada Highway Patrol." Doc. #10, p. 4.

Despite Plaintiff's "post hoc characterizations" regarding the broad import of his speech, *Desrochers*, 572 F.2d at 711, the complaint reflects that Plaintiff's actual statements were made not in the capacity of a representative or advocate for officer rights generally, but on behalf of himself and in regard to an ongoing, internal investigation into his own conduct. Doc. #5, ¶ 14 ("Before the investigation was completed and any discipline decided upon, Plaintiff complained that a thorough Internal Affairs investigation over the incident had not been completed, and that he had not been interviewed."); *id.* at ¶ 19 ("During a grievance meeting on July 24, 2008, Plaintiff further explained why his rights under NRS Chapter 289 had been violated in the course of the investigation . . . ."). Such speech is at the core of what is properly considered an individual personnel dispute or grievance. *See Connick*, 461 U.S. at 148 ("mere extensions of Myers' dispute over her transfer"); *Desrochers*, 572 F.3d at 715-16 ("motivated by their dissatisfaction with their

7

employment situation"); *Havekost v. United States Dep't of Navy*, 925 F.2d 316, 318 (9th Cir. 1991) ("nothing more than a workplace grievance"). In criticizing the investigation, Plaintiff spoke "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Connick*, 461 U.S. at 147. To accept Plaintiff's characterization would be to turn virtually every individual employee grievance into a potentially "precedent-setting" matter of broader public concern, swallowing the rule.

Plaintiff further contends that his criticisms of the Internal Affairs investigation touched on a matter of public concern because his speech pertained to a government agency's violation of state law. However, a simple reference to or conclusory allegation of illegality does not automatically qualify as a matter of public concern. *See Desrochers*, 572 F.3d at 711. Besides generally citing to NRS Chapter 289 in his complaint, Plaintiff fails to identify any provision of that chapter the defendants allegedly violated. *See* Doc. #5, ¶¶ 15, 19; Doc. #10, pp. 2-6. And there is no indication that any of the defendants' conduct that Plaintiff criticized was at all unlawful. *See* Doc. #5, ¶ 14 ("Before the investigation was completed and any discipline decided upon, Plaintiff complained that a thorough Internal Affairs investigation over the incident had not been completed, and that he had not been interviewed."). Moreover, not every alleged violation of a statute or policy is of public import in evaluating the performance of a government agency. As this court has previously held, speech addressing a law enforcement agency's alleged violation of the Nevada Revised Statutes does not touch on a matter of public concern where the provisions at issue govern the internal employment actions of law enforcement agencies and do not address public safety or otherwise have an effect on the public. *Simontacchi v. Nevada ex rel. Dep't of Public Safety*, 2009 WL 803119, *7 (D. Nev. 2009) (involving NRS § 281.153, which governs the compensation of public safety officers with disabilities). The alleged violation of Plaintiff's individual rights under NRS Chapter 289, which governs the procedural rights of peace officers in internal administrative grievance proceedings, fits squarely within that category.

### 2. Overtime Policy

Plaintiff next contends that his representative's statements on his behalf "about the changing of the practice of when an employee starts and ends overtime" touched on a matter of public concern—namely, officers' pay. Doc. #5, ¶ 19; Doc. #10, p. 4. The Ninth Circuit has held that speech regarding police officers' wages can touch upon a matter of public concern because "compensation levels undoubtedly affect the ability of the city to attract and retain qualified police personnel, and the competency of the police force is surely a matter of public concern." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). Nonetheless, not all speech on the topic of officer pay is necessarily or categorically entitled to First Amendment protection. Speech "not otherwise of public concern does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Connick*, 461 U.S. at 148 n.8.

In *McKinley*, the plaintiff spoke as a union representative and publicly criticized the city's decision not to give police officers an annual raise. 705 F.2d at 1112. The officer's speech was "specifically and purposefully directed to the public both through city council meetings and a television interview." *Id.* at 1115. In concluding that such speech touched on a matter of public concern, the court distinguished *Connick* as a case in which "almost all of the speech at issue dealt with a personal 'grievance concerning internal office policy'" and "the employee 'did not seek to inform the public' about the operation of a public agency; on the contrary, the employee's speech was directed at 'gather[ing] information for another round of controversy with her superiors.'" *Id.* at 1114 (quoting *Connick*, 461 U.S. at 148, 154) (brackets in original).

This case is closer to *Connick* than *McKinley*. Plaintiff did not seek to inform the public about the operations of the Sheriff's office as a representative of his fellow officers; rather, he spoke on an internal policy matter as an individual employee in a private grievance meeting and in the wake of an investigation and disciplinary action taken against him. *See Connick*, 461 U.S. at

148 ("mere extensions of Myers' dispute over her transfer"); *cf. Roth v. Veteran's Admin.*, 856 F.2d 1401, 1406 (9th Cir. 1988) ("Roth's criticisms of the VA involved no personal employment dispute. Nor were Roth's comments precipitated by adverse actions of his supervisors pertaining to his employment."). Moreover, although the content of Plaintiff's speech can be categorized as relating to officer pay generally, there is no suggestion that his speech concerned the "competency of the police force" through its ability "to attract and retain qualified police personnel." *McKinley*, 705 F.2d at 1114. Plaintiff criticized a particular administrative policy—"the practice of when an employee starts and ends overtime." Doc. #5, ¶ 19. Such internal policy matters are "the minutiae of workplace grievances," not matters of broader societal concern. *Havekost*, 925 F.2d at 319 (involving "an internal dispute over the Navy's dress code, scheduling, and responsibility for certain lost commissary profits").

Plaintiff argues in his opposition memorandum that his statements are of public concern because they pertained to violations of wage and hour law and regulations. Doc. #10, p. 3. Plaintiff's complaint contains no allegations supporting such a characterization; he alleges only that statements were made "about the changing of" the overtime policy. Doc. #5, ¶ 19. But even construing such vague allegations liberally, a mere reference to or suggestion of unlawful conduct by a public official does not automatically qualify as speech on a matter of public concern. *Desrochers*, 572 F.3d at 711. Plaintiff fails to identify any law that was allegedly violated or what aspects of the new overtime policy were unlawful. And in any event, any alleged violations would concern only the internal employment actions of a law enforcement agency. *Simontacchi*, 2009 WL 803119, *7.

### 3. Firearms Training Policy

Plaintiff finally contends that he spoke on a matter of public concern when "[h]e criticized the new firearms training policy that required officers to point weapons at fellow employees, as unsafe, dangerous and illegal." Doc. #5, ¶ 14. Plaintiff alleges that his criticism "pointed out a

10

danger, a level of discomfort, a refusal to violate law, and a policy contrary to traditional firearms philosophy and workplace safety at a public agency." *Id.* at ¶ 15. Plaintiff's criticism of the firearms training policy occurred during the Internal Affairs investigation into Plaintiff's discharge of his firearm at the shooting range and contemporaneously with his complaints regarding that investigation. *Id.* at ¶ 14.

Plaintiff's speech regarding the firearms training policy presents a closer case than his speech regarding the Internal Affairs investigation and the overtime policy. A police officer's statements on the topic of the training and safety of police officers could be "of public import in evaluating the performance of the [Sheriff] as an elected official." *Connick*, 461 U.S. at 148. As already observed, however, speech "not otherwise of public concern does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Id.* at 148 n.8. Whether discussions of officer training and safety "could be matters of public concern is beside the point—it does not answer whether *this* [communication] is such speech." *Id.*

Regarding the content of Plaintiff's speech, criticism of a particular police training practice is not the prototypical officer safety issue that would be of public import in evaluating the performance of Sheriff Miller as an elected official. Plaintiff did not blow the whistle on Sheriff Miller for failing, for example, to adequately equip his deputies or otherwise provide for their safety and protection in the field. *Cf. Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999) (en banc) (statements to the press questioning "the fire department's ability to respond effectively to life-threatening emergencies" touched on a matter of public concern). Instead, Plaintiff raised a "philosoph[ical]" disagreement regarding a particular firearms training practice within the Sheriff's office that he believed to be dangerous and made him personally

11

uncomfortable.[2]  Doc. #5, ¶ 14-15.  As the Supreme Court instructed in *Connick*, "[w]hile as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."  461 U.S. at 149.  That principle is no less true simply because the "internal office affairs" at issue involve inherent safety concerns, as do firearms training practices within a sheriff's office.

Also critical to the court's inquiry is the form and context of the speech, "particularly the *point* of the speech."  *Roth*, 856 F.2d at 1405.  "In other words, why did the employee speak (as best we can tell)?"  *Desrochers*, 572 F.3d at 715.  "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to coworkers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern."  *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 425 (9th Cir. 1995).

Here, Plaintiff did not speak "in order to bring wrongdoing to light" but "merely to further some purely private interest."  *Havekost*, 925 F.2d at 318.  Plaintiff did not voice his concerns at a staff meeting or request a meeting with his superiors to discuss the training policy.  *Cf. Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002).  Rather, Plaintiff criticized the firearms training practice while criticizing an ongoing investigation into the discharge of his own firearm at the shooting range.  Although Plaintiff alleges that he "had not negligently handled his weapon and had not refused to obey an order" and that the investigation was "a ruse to create discipline for Plaintiff," that does not negate the context in which he spoke.  Doc. #5, ¶¶ 11, 13.  According to Plaintiff's own allegations, he did in fact discharge his firearm, the investigation was initiated before any of the speech on which he bases his First Amendment retaliation claim, he

---

[2] While Plaintiff alleges that his speech addressed an "illegal" government policy, Doc. #5, ¶ 14, Plaintiff again fails to identify any law that may have been violated or otherwise substantiate his conclusory allegation.

considered the investigation to be unwarranted and illegitimate, and he criticized the firearms training policy during the course of that investigation. *Id.* at ¶¶ 11, 13-14. Indeed, Plaintiff voiced his criticisms contemporaneously with his criticisms of the Internal Affairs investigation itself. *Id.* at ¶ 14. Thus, as in *Connick*, "[t]his is not a case like *Givhan*, . . . where an employee speaks out as a citizen on a matter of general concern not tied to a personal employment dispute, but arranges to do so privately." 461 U.S. at 148 n.8 (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979) (involving a teacher's private complaints against racially discriminatory employment policies)). Considering the whole record, Plaintiff's criticism of the firearms training policy was precipitated by and a mere extension of his dispute with his superiors over what Plaintiff perceived as an illegitimate investigation. *Cf. id.* at 148; *Desrochers*, 572 F.3d at 715-16. The focus of Plaintiff's criticism was "not to evaluate the performance of the office" but rather to express his personal disagreement with an internal office policy during an ongoing disciplinary investigation into his own conduct at the shooting range. *Connick*, 461 U.S. at 148.

In summary, having considered the content, form, and context of Plaintiff's various statements, as revealed by the whole record, the court concludes that in each instance Plaintiff spoke "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Id.* at 147. Plaintiff's speech is therefore not entitled to First Amendment protection, and the first claim for relief will be dismissed accordingly.

### B. Tortious Constructive Discharge

Plaintiff next asserts a state law claim against Storey County for tortious constructive discharge based on the events preceding his resignation on August 26, 2008. Under Nevada law, a claim for tortious constructive discharge requires proof that: (1) the employee's resignation was induced by actions and conditions that are violative of public policy; (2) the employer's actions or working conditions were so aggravated and intolerable that a reasonable person in the employee's position at the time of resignation would feel compelled to resign; (3) the employer had actual or

constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied. *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 553 (Nev. 1995). While Defendants seek dismissal under the first and second prongs, this court need only reach the first.

Nevada recognizes the common law cause of action for tortious discharge as a public policy exception to the at-will employment doctrine. *Wayment v. Holmes*, 912 P.2d 816, 818 (Nev. 1996). Such actions "are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (1989). "To support a claim of tortious discharge, the evidence produced by the employee must be concrete and establish outrageous conduct that violates public policy." *State v. Eighth Judicial Dist. Court*, 42 P.3d 233, 240 (Nev. 2002). Examples of qualifying public policy violations include discharging an employee for filing a workmen's compensation claim, *Hansen v. Harrah's*, 675 P.2d 394, 397 (Nev. 1984); for refusing to work under unreasonably dangerous conditions, *D'Angelo v. Gardner*, 819 P.2d 206, 216 (Nev. 1991); and for reporting or refusing to participate in illegal activity, *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1069 (Nev. 1998). By contrast, the Nevada Supreme Court has declined to recognize a common law cause of action for tortious discharge in age discrimination cases due to the availability of statutory remedies, *Sands*, 777 P.2d at 899-900; where an assistant district attorney was terminated for conduct that exceeded his ethical obligations and constituted insubordination, *Wayment*, 912 P.2d at 818-19; and in "mixed motives" cases where the employee's protected conduct is not "*the* proximate cause of his discharge," *Allum*, 970 P.2d at 1066.

Plaintiff contends that Storey County violated public policy and induced his resignation by retaliating against him for his speech. *See* Doc. #5, ¶¶ 33-34; Doc. #10, p. 6. Specifically, Plaintiff alleges in his complaint that his "speech with respect to the Internal Affairs investigation, the firearms training tactics, and wage and hour policy fostered important Nevada public policy," and

14

that he was "suspended and constructively discharged . . . as *the* proximate result of Defendants' animus against [these] activities." Doc. #5, ¶¶ 33-34. As the court has already concluded, however, Plaintiff's speech as a public employee was unprotected speech under the First Amendment. Further, there does not appear to be any strong and compelling Nevada public policy precluding the suspension or termination of a public employee for speech not protected by the First Amendment. Plaintiff therefore fails to state a claim for tortious discharge under Nevada law.

### C. Family and Medical Leave Act

Plaintiff next claims that Sheriff Miller and Storey County violated the FMLA by disciplining him in November 2007 for going out to socialize with co-workers after taking FMLA-qualified sick leave to care for his sick mother. *Id.* at ¶¶ 6-10. Defendants argue the claim is time-barred. Doc. #13, pp. 12-13.

An action for violation of the FMLA must ordinarily be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). Here, the alleged violation occurred sometime in November 2007; yet Plaintiff did not file his original complaint until February 25, 2010, and he did not assert a claim under the FMLA until he filed his first amended complaint on March 22, 2010. Even assuming the FMLA claim relates back to the date of the original complaint, *see* Fed. R. Civ. P. 15(c)(1), the claim is untimely under the two-year statute and will be dismissed

Plaintiff points out that subsection (2) of the same statute provides a three-year limitations period for actions "brought for a willful violation of the FMLA," 29 U.S.C. § 2617(c)(2), and he argues that "[i]n the event the jury finds a willful violation existed under this set of facts, the action would be timely." Doc. #19, p. 1. However, Plaintiff has failed to allege a willful violation of the FMLA in his complaint. *See* Doc. #5, ¶¶ 6-10, 36-37.

### D. Defamation

Plaintiff concedes in his sur-reply that his defamation claim against Miller, based on an

15

incident occurring in December 2007, is time-barred under the two-year limitations period of Nevada Revised Statutes § 11.190(4)(c).  Doc. #19, p. 1; *see also* Doc. #13, p. 16.  Accordingly, the claim will be dismissed with prejudice.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (#9) is GRANTED as to all claims.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint (#4) and Motion for Re-Submission of Defendants' Motion to Dismiss Plaintiff's Complaint (#6) are DENIED as moot.

IT IS SO ORDERED.

DATED this 10th day of November, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE